# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DENISE E. VANGEL, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. SA CV 17-01511-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Denise Vangel ("Plaintiff") appeals from the final decision of the Social Security Commissioner denying her application for disability insurance benefits ("DIB"). For the reasons below, the Commissioner's decision is reversed and this matter is remanded.

## I. BACKGROUND

On August 21, 2012, Plaintiff filed her initial application for DIB, alleging disability beginning on July 31, 2011. See Administrative Record ("AR") 226-28. Her application was denied initially and on reconsideration. See AR 86, 100. Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"). See AR 125-26. An ALJ held a hearing on

June 21, 2016, in which the ALJ heard testimony by Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See AR 46-74. On August 15, 2016, the ALJ issued an unfavorable decision. See AR 10-23.

The ALJ determined that Plaintiff had severe impairments of degenerative disc disease of the cervical spine and carpal tunnel syndrome. See AR 15. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at the light exertional level with the following limitations: she could lift no more than 20 pounds occasionally and 10 pounds frequently; she could sit for 6 hours and stand or walk for 6 hours; she could frequently perform fine and gross manipulation; she could occasionally sustain posturals; and she was precluded from ladders, ropes, scaffolding, and working at unprotected heights, as well as jobs involving concentrated exposure to vibration or requiring tending to fast moving machinery. See AR 18. Based on the VE's testimony, the ALJ found that Plaintiff could perform the representative occupations of cashier II and mail clerk. See AR 22-23. Therefore, the ALJ concluded that Plaintiff was not disabled. See AR 23.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. Plaintiff then sought review by this Court. See Dkt. 1.

## II. DISCUSSION

### A. Medical Opinions

Plaintiff contends that the ALJ improperly discounted the opinions of her treating physicians, and that the RFC is therefore unsupported by substantial evidence. See Joint Stipulation (Dkt. 16) ("JS") at 5-8.

#### 1. Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the

plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c);[1] Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. See Lester, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. See 20 C.F.R. § 404.1527(c)(2)-(6).

---

[1] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies the version of 20 C.F.R. § 404.1527 that was in effect at the time of the ALJ's August 2016 decision.

### 2. Relevant Medical Opinions

Dr. Andrew Concoff was Plaintiff's treating physician from August 2012 to April 2016. See AR 533-36, 547-50, 798-802, 839-42, 885-87, 904-07.[2] In May 2016, Dr. Concoff provided an opinion letter summarizing the treatment that he and his physician assistant ("PA") had provided to Plaintiff and describing Plaintiff's limitations. See AR 956-63. Dr. Concoff concluded that Plaintiff was "limited to less than 2 hours of sitting or standing per work day," and would need to change body positions every 20 to 30 minutes, thus requiring unscheduled breaks up to every hour to change positions. AR 962-63. Dr. Concoff further opined that Plaintiff could carry less than 10 pounds frequently and 10 pounds rarely, but could never carry 20 pounds, that Plaintiff could occasionally turn her head left or right and look up or down and could frequently hold her head in a static position, and that Plaintiff could occasionally twist, stoop, or climb stairs, but could rarely crouch or squat and could never climb ladders. See AR 963. Dr. Concoff also found that Plaintiff had "significant limitations" in reaching, handling, and fingering. Id.

Dr. Zepeda treated Plaintiff for pain management from March 2011 to August 2015. See AR 414-15, 418-19, 421-23, 496-97, 551-54, 560-64, 570-73, 599-602, 604-06, 624-26, 634-35, 644-55, 812-18, 824-28, 870-77.[3] Dr. Zepeda provided a letter dated May 12, 2016, in which he stated that Plaintiff "suffer[ed] from debilitating chronic pain due to cervical spondylosis, headaches, carpal tunnel syndrome and myofascial pain." AR 964. Because Plaintiff had not had success with various treatment interventions including

---

[2] The Court disregards Dr. Concoff's treatment note from April 4, 2016, as it falls outside of the relevant period. See AR 798-801.

[3] The Court disregards Dr. Zepeda's treatment notes dated prior to the relevant period. See AR 634-35, 644-55.

medication and a comprehensive pain program including physical therapy, occupational therapy, biofeedback and psychological counseling, Dr. Zepeda recommended that Plaintiff should be considered permanently disabled. See id.

State agency medical consultants Dr. Craig Billinghurst and Dr. Herbert Kushner found that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds, could sit for 6 and stand/walk for 6 hours each in an 8-hour day, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and reach overhead, could perform frequent but not constant fine/gross manipulation, and could never climb ropes, ladders, or scaffolds. See AR 81-83, 95-97. While Dr. Billinghurst found that Plaintiff needed to avoid concentrated exposure to vibration and any exposure to hazards, including machinery and heights, see AR 83, Dr. Kushner's assessed environmental limitations required Plaintiff avoid concentrated exposure to extreme cold and heat, noise, vibration, and hazards including machinery and heights, see AR 97.

### 3. Analysis

#### a. Dr. Concoff

The ALJ assigned "very little weight" to Dr. Concoff's opinion, reasoning that Dr. Concoff gave "too much credence to the claimant's subjective complaints of pain while ignoring her repeated notations of intact motor strength and sensation and the lack of support on objective tests for pain symptoms in her low back and legs." AR 21. The ALJ also noted that Dr. Concoff had assigned limitations based on impairments found not to be severe, demonstrating Dr. Concoff's "lack of knowledge of the requirements of social security disability." Id. For the reasons explained below, the Court finds that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Concoff's opinion.

First, the ALJ's conclusion that Dr. Concoff's opinion relied too heavily on Plaintiff's subjective complaints of pain as opposed to clinical findings is not supported by substantial evidence. Although Dr. Concoff's opinion letter recounted Plaintiff's complaints in detail, it also included notable findings from physical examinations, treatment plan summaries, and impressions of MRI and EMG/nerve conduction tests. See AR 956-62. And as noted in Dr. Concoff's opinion, various clinical findings from Dr. Concoff and his PA substantiate Plaintiff's complaints of pain, including tenderness to palpation at the thoracic outlet, see AR 550, 842, 849, right paraspinal area, see AR 550, right occiput, see 526, 849, occipital foramen, see AR 887, trapezial muscles, see AR 860, and first carpometacarpal joints, see AR 887; midline tenderness of the cervical spine, see AR 526, 849; limited range of motion of the cervical spine, see AR 849, 860, 887, 907; and positive Tinel's, Spurling, Adson, Wright, and scalene stretch tests, see AR 526, 536, 550, 849, 860, 907. The three EMG/nerve conduction studies, two of which Dr. Concoff referenced in his opinion, were consistent with carpal tunnel syndrome and showed a progression of right median mononeuropathy from mild in November 2011 to moderate in December 2012 and August 2015, with a finding of mild left median mononeuropathy in December 2012. See AR 511-13, 612-13, 774-75. Likewise, Plaintiff's cervical spine MRIs showed multilevel mild to moderate degenerative changes in January 2011, see AR 652-53; multilevel mild to moderate degenerative changes with mild spinal stenosis and foraminal narrowing in December 2012, see AR 738-39; and moderate degenerative changes with mild canal stenosis in August 2015, see AR 935-36.

To the extent that the ALJ found Dr. Concoff's findings inconsistent with treatment records showing intact motor strength and sensation, this finding is also not supported by substantial evidence. Several treatment notes from Dr. Concoff and his PA reflect decreased motor strength. See, e.g., AR

6

526, 550, 849, 860. Similarly, the treatment records do not uniformly document intact sensation, see, e.g., AR 526, 536, 550, and Plaintiff's abnormal nerve conduction studies substantiate her complaints of numbness, see AR 511-13, 612-13, 774-75. Dr. Concoff assessed his limitations on the basis of Plaintiff's longstanding chronic pain and carpal tunnel syndrome, which were corroborated by objective medical evidence. See AR 962. That the record contained some findings of intact motor strength and sensation was not a legitimate basis for the ALJ to discount Dr. Concoff's opinion.

Likewise, whether the medical evidence supported Plaintiff's complaints of low back and leg pain does not bear on Dr. Concoff's opinion. It is unclear why the ALJ made any reference to unsubstantiated complaints of leg pain, as the extensive medical record contains only minimal complaints from Plaintiff regarding knee pain, see AR 891, 904, and while Dr. Concoff mentioned one complaint in summarizing Plaintiff's visit on that date, it does not appear that Dr. Concoff relied on this complaint in determining Plaintiff's limitations. See AR 958, 962-63. Similarly, Plaintiff's alleged low back pain does not appear to have heavily influenced Dr. Concoff's assessed limitations, as Dr. Concoff acknowledged Plaintiff's low back pain but characterized her pain as "affecting mainly the neck, shoulder and upper extremity." AR 962-63.

Finally, that Dr. Concoff assigned limitations based on non-severe impairments was not a legitimate reason to discount his opinion. An ALJ may consider a physician's familiarity with "disability programs and their evidentiary requirements" in assigning weight to his or her opinion. 20 C.F.R. § 404.1527(c)(6). But the Social Security regulations provide that in determining the RFC, the ALJ is required to consider all impairments, "including [a claimant's] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). Therefore, Dr. Concoff's inclusion of impairments that the ALJ deemed non-severe, including thoracic outlet

syndrome, in determining Plaintiff's functional limitations does not demonstrate a "lack of knowledge of the requirements of social security disability." AR 21.

Because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discount Dr. Concoff's opinion, remand is warranted.

   b. <u>Dr. Zepeda</u>

The ALJ also assigned "very little weight" to Dr. Zepeda's opinion, reasoning that his opinion was "based more on [Plaintiff's] subjective complaints than the objective evidence that does not fully support all the symptoms alleged," and that his conclusion that Plaintiff was permanently disabled was a determination reserved for the Commissioner. <u>See</u> AR 21-22.

As Plaintiff concedes, the ALJ properly rejected Dr. Zepeda's conclusion that Plaintiff was permanently disabled. <u>See</u> JS at 7; <u>see also</u> <u>McLoed v. Astrue</u>, 640 F.3d 881, 884-85 (9th Cir. 2011) (upholding ALJ's rejection of physician's conclusion that claimant could not work at all because "this determination is for the Social Security administration to make"). But this was not a specific and legitimate reason for the ALJ to discount the remainder of his opinion. <u>See</u> <u>Daniel v. Berryhill</u>, No. 16-0651, 2017 WL 4082368, at *3 (C.D. Cal. Sept. 13, 2017) ("[M]erely because a treating or examining doctor opines that a plaintiff is disabled is not a permissible reason to reject that opinion.").

Turning to the ALJ's remaining reason for giving very little weight to Dr. Zepeda's opinion, the record contains a significant amount of objective evidence to support Dr. Zepeda's opinion. The record contains various treatment notes from Dr. Zepeda, including findings of palpable trigger points in muscles of the head and neck, <u>see</u> AR 553, 562, 601, 605, 625, 815; palpable trigger points in the muscles of the low back, <u>see</u> AR 601, 605, 815; palpable

8

trigger points in the muscles of the buttocks, right quadratus lumbrum, and gluteal muscles, see AR 815; pain on palpation of the cervical facets, see AR 562, 601, 605, 815, 827; pain on palpation of the thoracic and lumbar facets and lumbar intervertebral spaces, see AR 601, 605, 625, 876; pain on palpation of the bilateral sacroiliac joints, see AR 601, 605; positive bilateral facet loading signs, see AR 625, 876; and a positive piriformis stress test, see AR 815. The records also document Dr. Zepeda's administration of various treatment modalities including radiofrequency ablation, see AR 414-15, 418-19; epidural injections, see AR 496-97, 870-71; trigger point injections, see AR 564; and a piformis muscle injection, see AR 566. Dr. Zepeda's treatment notes also reflect that Plaintiff received "minimal benefit" from the chronic pain program. See, e.g., AR 554, 563, 572, 601, 606, 827, 876.

Because this case will be remanded for further consideration of Dr. Concoff's opinion, on remand the ALJ should also consider Dr. Zepeda's opinion to the extent that it supports limitations based on Plaintiff's failure to respond to various forms of treatment.[4]

**B.  Subjective Symptom Testimony**

Plaintiff also contends that the ALJ failed to provide legally sufficient reasons for discounting her subjective symptom testimony. See JS at 13-15.

---

[4] Plaintiff also argues that the ALJ improperly gave great weight to the opinions of the state agency reviewing physicians in formulating the RFC. See JS at 5, 7-8. It is unclear which opinions Plaintiff challenges, as she refers to a state agency psychologist and state agency psychiatrist but does not appear to object to the ALJ's findings regarding Plaintiff's mental impairment. See JS at 5. Plaintiff's argument is likewise puzzling when applied to state agency medical consultants Dr. Billinghurst and Dr. Kushner, as the ALJ gave "less weight" to these physicians. AR 21. Because this case is being remanded on other grounds, the Court does not address Plaintiff's argument regarding the state agency reviewing physicians.

1. **Applicable Law**

The Ninth Circuit has established a two-step analysis for determining the extent to which a plaintiff's symptom testimony must be credited. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Garrison, 759 F.3d at 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

2. **Relevant Facts**

In her disability report, Plaintiff stated that she had fibromyalgia, depression, anxiety, cervical spondylosis, lumbosacral spondylosis, degenerative lumbosacral intervertebral disc disease, cubital tunnel syndrome of the right hand, bilateral carpal tunnel syndrome, thoracic outlet syndrome, and lumbago. See AR 258. Plaintiff reported experiencing "constant pain" throughout her body, especially in the neck and back, numbness and tingling in both hands, especially the right hand, dizziness and lightheadedness, weakness, shortness of breath, and headaches. AR 269. Plaintiff also reported memory and concentration difficulties, lack of motivation, anger outbursts, mood swings, and various medication side effects. See id. In an update from

April 2013, Plaintiff noted difficulty standing, bending, and reaching, which impacted her ability to dress herself and take showers, difficulty with "heavier chores" due to standing, walking, bending, and reaching limitations as well as lack of focus and motivation, and difficulty sleeping due to pain, racing thoughts, and feelings of worry. See AR 275.

At the hearing, Plaintiff testified that she had pain and weakness throughout her body, including in her low back, mid-back, neck, arms, and hands. See AR 56. Plaintiff also stated that she had nerve pain that "shoots down [her] arms," see AR 58, that activities such as handwriting, typing, stirring food, putting silverware away, and opening jars or doorknobs exacerbated her wrist and hand pain, see AR 61, and that she frequently dropped things such as glasses due to weakness in her hands, see AR 65, 67. Plaintiff testified that she was prescribed a brace for her wrist but that it sometimes made her pain worse due to her arthritis, and that she sometimes wore a back brace. See AR 61-62. Plaintiff stated that she could walk for up to a block and half at a time before needing to stop due to pain, and that she could stand for up to 3 to 5 minutes and could sit for 20 to 25 minutes before needing to change positions. See AR 63-64. Plaintiff further testified that she saw a psychiatrist for her ADD and depression, took medication for these impairments, and struggled with concentration and staying focused. See AR 65-66. Plaintiff stated that she lived part time at home and part time with her mother and brother, was unable to do much of her housework and did not do her own laundry, needed to wear loose clothing due to difficulty getting dressed, and had trouble with zippers and buttons. See AR 67-68.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's symptoms concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and

other evidence in the record. See AR 19. The ALJ reasoned that the medical evidence did not "fully support the level of pain alleged in all areas of [Plaintiff's] body" because there were only minimal findings supporting Plaintiff's lumbar spine degenerative disc disease and thoracic outlet syndrome, both of which the ALJ found not severe in step two of the analysis. AR 15-16, 20. The ALJ also noted that the medical evidence consistently showed Plaintiff to have full motor strength, aside from "short lived" instances in which she exhibited acute symptoms of carpometacarpal joint pain. AR 20. The ALJ further reasoned that despite alleging symptoms of depression, the records showed Plaintiff "only required medications with little evidence of counseling or any other treatment modality." Id. The ALJ also found that Plaintiff's testimony at the hearing about why she stopped working contradicted her statements in the disability report. See id. Finally, the ALJ reasoned that Plaintiff's daily activities contradicted her symptom testimony, because Plaintiff reported caring for her mother who had memory problems. See id.

3. **Analysis**

For the reasons discussed below, the Court finds that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

First, even if the ALJ was entitled to discount Plaintiff's symptom testimony about her depression on the basis of limited treatment, such reasoning was insufficient to discredit Plaintiff's testimony regarding her pain symptoms, which comprised the majority of Plaintiff's complaints. See Strawn v. Berryhill, No. 16-3249, 2017 WL 3393403, at *7 (D. Ariz. Aug. 8, 2017) (holding that claimant's positive response to mental health treatment "only serve[d] to discount plaintiff's statements as to his symptoms related to his mental impairments" and that because "most of plaintiff's pain and symptom

12

statements had to do with limitations flowing from his physical impairments, this reason provides inadequate support for the ALJ's overall adverse credibility finding"); Moreno v. Colvin, 174 F. Supp. 3d 1112, 1119 (D. Ariz. 2016) (finding Plaintiff's failure to seek mental health treatment insufficient to discredit Plaintiff's testimony regarding her fibromyalgia).

The ALJ erred in concluding that Plaintiff made contradictory statements about her work history. The ALJ found that Plaintiff's indication on her disability report that she stopped working on July 31, 2011, "[b]ecause of [her] condition(s)" conflicted with her testimony at the hearing that she was laid off from her job in February 2010. See AR 20 (citing AR 55, 63, 259). But the ALJ ignores Plaintiff's forthright statement about the layoff on the same report. See AR 260 ("I was laid off from my employer in 2/2010 and have not worked since then"). Given Plaintiff's candor about her layoff on this same form, her statement about July 2011 shows an attempt to indicate the proper onset date of her disability. Therefore, these statements characterized by the ALJ as contradictory did not constitute a clear and convincing reason to discount Plaintiff's testimony. See Garrison, 759 F.3d at 1014-15.

The ALJ also erred in discounting Plaintiff's credibility because her daily activities were inconsistent with her alleged limitations. See AR 20. It is true that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). But the sole support for the ALJ's reasoning was a single notation in Plaintiff's psychiatric record indicating that she was "helping [her] mother who is going through some memory issues." AR 785. Because the record lacks any details about the extent to which Plaintiff was caring for her mother, substantial evidence does not support the ALJ's conclusion that this activity was inconsistent with Plaintiff's alleged symptoms of pain and poor concentration. See Trevizo v. Berryhill,

13

871 F.3d 664, 682 (9th Cir. 2017) (rejecting claimant's childcare activities as a ground for adverse credibility finding where record contained "almost no information" about such activities).

Some of the objective medical evidence does not support Plaintiff's pain testimony, particularly with regard to Plaintiff's lower back pain and thoracic outlet syndrome. But even if the Court were to credit this reasoning, on its own it is insufficient to discount Plaintiff's subjective symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (holding that "lack of medical evidence cannot form the sole basis for discounting pain testimony" even though "it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ's other reasons for discounting Plaintiff's pain testimony were invalid, the objective medical evidence does not suffice as a clear and convincing reason to discount Plaintiff's subjective complaints about the severity of her pain.

## C. Remand Is Warranted

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings

14

when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to fully and properly consider the opinions of Plaintiff's treating physicians and Plaintiff's symptom testimony and conduct such other proceedings as are warranted.

## III. CONCLUSION

For the reasons stated above, the conclusion of the Social Security Commissioner is reversed and the action is remanded for further proceedings.

Date: January 31, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge